IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

U.S. EQUAL EMPLOYMENT            *
OPPORTUNITY COMMISSION
                                 *

    Petitioner,               *

      v.                    *            Civil Action No. RDB 10-3472
                                 *
RANDSTAD, *et al.*,
                                 *
    Respondent.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pending before this Court is the United States Equal Employment Opportunity Commission's ("EEOC" or Petitioner) Application to Show Cause Why an Administrative Subpoena Should Not be Enforced ("Application") against the Respondent, Randstad. ECF No. 1. The purpose of the Administrative Subpoena is to investigate charges of national origin and disability discrimination filed against Randstad under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). This Court held a show cause hearing on February 10, 2011. The central issue for this Court to resolve is whether 1) the EEOC has jurisdiction to investigate these charges, 2) the information the EEOC seeks is relevant, and 3) the requested production would place an undue burden on Randstad. For the reasons stated below, the EEOC's Application (ECF No. 1) is DENIED.

<span style="text-align: center">BACKGROUND</span>

**A.      Randstad Background**

Defendant Randstad is an employee staffing agency based in Atlanta, Georgia that has thirteen branch offices in Maryland and over 600 branches nationwide.  Randstad provides both temporary staffing and permanent employee placements for its clients.  Randstad's staffing services primarily two types of clients: 1) light industrial clients in need of laborers in manufacturing or warehouse settings, and 2) administrative clients in need of clerical and administrative employees in office settings.  Randstad's light industrial clients do not have a minimum education requirement, but generally require temporary workers to have basic reading skills to perform their jobs and follow written safety policies and procedures.  Randstad's administrative clients require workers to have a high school diploma or its equivalent.  In Randstad's words, "reading is not an explicit job requirement (as opposed to an educational requirement) for any Randstad client, however, reading is an implicit requirement for virtually every light industrial client assignment."  Randstad Response (ECF No. 7) at 4.  As a result, Randstad maintains that though it does not have a policy against hiring individuals who cannot read and write, it typically has no work for those who lack remedial reading skills.

**B.      Morrison's Employment at Randstad and Discrimination Charge**

On August 4, 2005, Randstad's Hagerstown, Maryland branch hired the Charging Party, Kevin Morrison ("Morrison"), who was born in Jamaica and speaks Patois, an English-based Creole language.  On September 27, 2006, after Morrison had worked for three different clients, Randstad placed him on assignment as a Warehouse Associate with Lenox, Inc. ("Lenox").  After his first day on the job, Lenox became aware that Morrison could not read when he requested assistance in completing certain paperwork.  Lenox advised Morrison that he could not

continue working there and would be ineligible for future assignments until he developed remedial reading and writing skills. Morrison alleges that when he called Randstad, a manager told him "we don't hire people who cannot read. Come back when you can read." Application Ex. D. On September 28, 2006, Randstad terminated Morrison's assignment and informed him that it had no assignment available for someone unable to read, emphasizing the importance of comprehending written safety warnings that existed at all the available light industrial assignments.

On January 24, 2007, Morrison filed a charge with the EEOC alleging he was denied placement on the basis of his national origin—Jamaican. Response Ex. A. Morrison did not make any allegations in his charge as to systemic discrimination against other Jamaican employees. *Id.* On March 16, 2007, Randstad submitted a position statement acknowledging that it "would never have placed Mr. Morrison on assignment with any Randstad clients had Randstad been aware [that Morrison could not read], since virtually all of the assignments that Randstad is called upon to fill require reading and/or writing skills." Application Ex. C.

At some point thereafter, the EEOC arranged for Morrison to undergo a psychological evaluation, which found that he was mildly retarded. On January 30, 2009, over two years after the Initial Charge was filed, Morrison's charge was amended to allege that Randstad discriminated against him based on his disability and by failing to accommodate him. The EEOC investigated these new allegations, and on September 30, 2009, issued a Letter of Determination concluding that "there is reasonable cause to believe that the Charging Party was denied a reasonable accommodation" in violation of the Americans with Disabilities Act ("ADA"). Answer Ex. C.

C.      EEOC's Request for Information

Although Randstad had not yet submitted a written request challenging the EEOC's Determination, on October 28, 2009, the Director issued a Notice of Reconsideration and reopened the investigation into Morrison's Amended Charge. Application Ex. G. Shortly thereafter, the EEOC sent a Request for Information to Randstad asking for all information from January 2006 to the present regarding: 1) all position assignments made by the Hagerstown office, including whether reading and writing was required for the position, and 2) whether the Hagerstown office denied an individual employment because of his inability to read or write. The EEOC also requested a copy of Randstad's policies stating that an employee must be able to read and write. On November 17, 2009, Randstad responded to the requests and specifically informed the EEOC that it did not and had never maintained a policy banning the employment of illiterate individuals. Application Ex. I. Randstad also objected to a number of the EEOC's requests, including its request for information about all assignments the Hagerstown branch had made since 2006, which Randstad claimed was unduly burdensome and irrelevant. In its Application, the EEOC characterizes Randstad's response to its Request for Information as "woefully incomplete." Application at 4.

### D.  EEOC's Subpoena

On January 15, 2010, the EEOC served Randstad with a subpoena *duces tecum* ("Subpoena") requesting the broad scope of information that Randstad objected to in its response to the Request for Information. Application Ex. J. The Subpoena demanded company-wide information as to all placements made by every Randstad branch in the United States—375 branches—from January 2005 to the present. *Id*. Specifically, the Subpoena states:

1.  Produce a copy of the client job order, position description and all documents setting for the essential job functions for each assignment performed by Charging Party, including but not limited to the mail clerk position with Good Humor, the warehouse worker

position with Ashley Home Store, Inc., and the warehouse worker position with Cosmic Pet Products, Inc.

2.   Produce all documents which identify the individual(s) who was selected for the Lenox warehouse position, providing the individual's name, social security number, address, phone number and national origin (if known).

3.   Produce documents or data compilation setting forth all position assignments made by Respondent during the period January 1, 2005 through the present, identifying the following:

   a. position title;
   b. client name;
   c. date assignment was filled;
   d. whether reading and writing was required for the position;
   e. all applications for the position.

4.   For each position identified in response to request number 3, submit a copy of the job order and job description.

5.   Produce a copy of Respondent's policies and procedures which pertain to the Americans with Disabilities Act of 1990 and Title VII of the 1964 civil rights act including but not limited to those policies and procedures which address reasonable accommodations.

6.   For all persons, other than Charging Party, who applied for employment with Respondent at its Hagerstown, Maryland facility between January 1, 2006 through the present and were denied employment because of an inability to read or write, please produce documents setting fort the following:

   a. the individual's name, address, phone number, national origin (if known), and disability (if known);
   b. the position sought;
   c. the name of the client which had the position;
   d. a copy of the individual's application;
   e. a copy of the job order and job description.

Application Ex. J.  On February 1, 2010, Randstad filed a Petition to Modify or Revoke the

Subpoena ("Petition") in which it argued, among other things, that the Subpoena sought

irrelevant information, asked for information Randstad did not have, and was duplicative.

Response Ex. D.  On June 28, 2010, the EEOC issued a Determination granting the Petition such

that it limited the geographic scope of the document requests to Randstad's Maryland offices, but

denied the remaining arguments. Kiel Declaration 4(j). On August 18, 2010, Randstad provided responses to Request Numbers 1, 2, 5 and 6. As to Request Numbers 3 and 4, Randstad provided the information asked for with respect to every assignment where Morrison was placed, but otherwise objected to the scope, relevancy and burdensome nature of the requests.

On December 10, 2010, the EEOC filed the pending Application for an Order to Show Cause seeking enforcement of its Subpoena. The EEOC contends in its Application that Randstad's responses to Request Numbers 2 and 6 were incomplete, and that the Subpoena should be enforced in all respects. On February 7, 2011, Randstad filed its Response, asserting that it has fully responded to Requests Numbers 2 and 6, and that the other portions of the Subpoena do not need to be enforced. On February 10, 2011, this Court held a Show Cause Hearing on the Application and oral argument was heard. At the hearing, this Court determined that Randstad's responses to Request Numbers 2 and 6 were sufficient, and held *sub curia* the remaining issues as to Request Numbers 3 and 4.

STANDARD OF REVIEW

The EEOC's subpoena enforcement proceedings involve limited judicial review. *Equal Employment Opportunity Comm'n v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 113 (4th Cir. 1997). To enforce an administrative subpoena, the agency need only demonstrate that: "(1) the investigation is within the agency's authority; (2) the procedural requirements have been followed; and (3) the information sought is relevant to the investigation." *Id*. Once the agency makes this showing, this Court must enforce the subpoena unless the party being investigated demonstrates that the subpoena is unduly burdensome. *See EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 476 (4th Cir. 1986).

A valid charge of discrimination filed with the EEOC "is a jurisdictional prerequisite to

judicial enforcement of a subpoena issued by the EEOC." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984); *EEOC v. City of Norfolk Police Dept.*, 45 F.3d 80, 82 (4th Cir. 1995). Enforcement of administrative subpoenas is "not absolute," and a court should not enforce a subpoena where the "defense raised is 'jurisdictional' in nature—i.e., when the agency lacks jurisdiction over the subject of the investigation." *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001). However, the court should enforce an administrative subpoena, unless "jurisdiction is 'plainly lacking.'" *Id.*

Thus, "courts must enforce administrative subpoenas unless the 'evidence sought by the subpoena [is] plainly incompetent or irrelevant' to 'any lawful purpose' of the agency." *Id.* (citing *Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975)) "A party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it." *Id.* (quoting *EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1429 (9th Cir. 1983)).

<u>ANALYSIS</u>

The question before this Court is whether the EEOC's Administrative Subpoena to investigate the disability discrimination claim should be enforced. Randstad contends that the EEOC does not have jurisdiction over the disability claim, and further that the information the EEOC seeks is irrelevant and unduly burdensome.

**A.      Jurisdiction**

Randstad contends that Morrison's Amended Charge obviously exceeded the filing time limit set forth in Title VII and that, as a consequence, the EEOC has overstepped its statutory authority and lacks jurisdiction to enforce the subpoena at issue. Under Title VII, an employee has 180 days from the date of the employer's alleged wrongs to file a discrimination charge with

the EEOC. *See* 42 U.S.C. § 2000e-5. A Title VII claimant in a deferral state, such as Maryland, however, has 300 days in which to file a charge with the EEOC.[1] *See* 42 U.S.C. § 2000e-5(e)(1). As the United States Court of Appeals for the Fourth Circuit has held, "a charge which shows on its face that it is untimely is . . . an invalid charge incapable of invoking EEOC's investigatory powers." *Norfolk Police Dep't*, 45 F.3d at 83 (quoting *EEOC v. Ocean City Police Dept*., 820 F.2d 1378 (4th Cir. 1987) (en banc)).

There is no dispute that Randstad terminated Morrison's employment on September 28, 2006. There is also no dispute that in his Initial Charge, which was timely filed on January 5, 2007, Morrison checked only the box indicating that he was discriminated based upon his national origin. Thus, Morrison's Initial Charge makes no mention of his disability or that Randstad failed to provide him with a reasonable accommodation. This is unsurprising, since it is undisputed that Morrison did not learn that he was disabled until after he filed his Initial Charge, when the EEOC arranged for Morrison to have a psychological evaluation. It is also worth emphasizing that Morrison did not file his Amended Charge alleging disability discrimination under the ADA until January 30, 2009—over two years after he filed the Initial Charge. Given that Morrison's last day of work was the day he was terminated on September 28, 2006, Morrison's Amended Charge does not allege new discriminatory conduct. Thus, on its face, the disability discrimination claim is time-barred since it was filed well after the 300 day time limit.

The EEOC maintains, however, that the disability discrimination claim is timely because it arose from the same facts and circumstances as Morrison's national origin discrimination

---

[1] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). Maryland is classified as a deferral state because the Maryland Commission on Human Relations ("MCHR") constitutes a state agency that is capable of providing relief from discrimination.

charge and therefore relates back to the original filing date. EEOC regulations provide that a charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. 29 C.F.R. § 1601.12(b). "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." *Id*. However, as the Fourth Circuit has specifically held, an amendment to an EEOC charge alleging a new theory of recovery does not relate back to the original charge. *Evans v. Technologies Applications & Serv. Co*., 80 F.3d 954, 963 (4th Cir. 1996) (finding an amended charge under the ADEA was untimely and did not relate back to the initial charge alleging sex discrimination under Title VII because "age discrimination does not necessarily flow from sex discrimination and vice versa"); *see also Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 878 (5th Cir. 2003) (holding that an amendment alleging disability discrimination does not relate back to original charge for race, gender and retaliation); *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1224-25 (11th Cir. 2000) (affirming dismissal of Plaintiff's claim of retaliatory discharge based on national origin discrimination because not raised in EEOC charge of disability discrimination and retaliation based on disability); S*imms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d 1321, 1327 (10th Cir. 1999) (amended charge does not relate back where original charge alleged only race discrimination and amended charge includes retaliation as "a new theory of recovery").

An amendment is also unlikely to relate back to an original charge when the theories of recovery arise from different statutory schemes. *Evans*, 80 F.3d at 963 (emphasizing that the age discrimination claim did not relate back to the sex discrimination claim because "Title VII and ADEA claims arise from completely distinct statutory schemes."). Some courts have even found

the fact that an original charge and an amended charge allege claims arising from different statutory schemes is sufficient by itself to negate an argument that the latter claim arose out of the former. *See, e.g.*, *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir. 1988) (rejecting the argument that an age discrimination claim arose from same subject matter as the former claim based on national origin because "Title VII and ADEA claims arise from entirely distinct statutory schemes" and the original charge contained no hint of age discrimination).

In this case, Morrison's disability discrimination claim in the Amended Charge alleges a new theory of recovery, and therefore does not relate back to the national origin claim in the Initial Charge. The EEOC contends that, unlike in *Evans*, Morrison's disability discrimination claim flows from the national origin discrimination claim because they are "both the result of the same literacy requirement." Reply at 5. The United States Court of Appeals for the Seventh Circuit rejected a similar argument made by the EEOC in *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 575 (7th Cir. 1998). In *Fairchild*, as in this case, the amended charge was identical to the initial charge except that the final, concluding sentence of the amended charge was changed to assert a claim for disability discrimination. *Id.* The EEOC argued in *Fairchild*, as the EEOC argues here, that the disability discrimination claim in the amended charge related back to the discrimination claim in the original charge. *Id.* The Seventh Circuit disagreed, emphasizing that:

> [29 C.F.R. § 1601.12(b)] states that an amendment will relate back when it alleges additional *acts* related to or growing out of the same subject matter of the original charge. For example, a person who originally charged she was not promoted based on her sex could amend her complaint to allege that later she was fired on the basis of her sex. These are two acts, failure to promote and termination, which grow out of the subject matter of the original charge: sex discrimination. Here Fairchild alleges an additional basis for legal liability, not additional acts.

*Id.* (emphasis added). Similarly, in this case the EEOC misinterprets the regulation's language allowing an amended charge to allege additional *acts* related to the same subject matter of the

original charge, believing that this language allows them to add an additional basis for legal liability. Accordingly, the EEOC lacks jurisdiction to enforce the Subpoena because Morrison's disability discrimination claim is untimely on its face.[2]

## B. Relevancy and Burdensomeness

Randstad also argues that the Subpoena as written requests information that is not relevant to Morrison's individual charge. Alternatively, even if the information were relevant, Randstad contends that complying with the Subpoena would be unduly burdensome. Since a determination of the relevancy and burdensomeness of the Subpoena requires an analysis of the information it seeks, this Court notes that the EEOC's June 28, 2010 Determination has already limited the scope of the Subpoena to Randstad's Maryland offices. Furthermore, there is no dispute that Randstad has sufficiently responded to Requests Nos. 1 and 5, and this Court held at the Show Cause Hearing that Randstad has adequately responded to Requests Nos. 2 and 6. Thus, only Requests Nos. 3 and 4 remain, which ask Randstad to:

3. Produce documents or data compilation setting forth all position assignments made by Respondent during the period January 1, 2005 through the present, identifying the following:

　　a. position title;
　　b. client name;
　　c. date assignment was filled;

---

[2] The EEOC also argues that the Amended Charge is timely under 29 C.F.R. §1626.22(c), which provides that:

> Whenever a charge is filed under one statute and it is subsequently believed that the alleged discrimination constitutes an unlawful employment practice under another statute administered and enforced by the Commission, the charge may be so amended and timeliness determined from the date of filing of the original charge.

This statute relates only to claims brought under the Age Discrimination in Employment Act, however, and does not apply here. The EEOC argues in its Reply that *Evans* was superseded by 29 C.F.R. § 1626.22. As Randstad pointed out at oral argument, however, the language of 29 C.F.R. § 1626.22 was first adopted in 1983—thirteen years before *Evans*. *See* 29 C.F.R. § 1626.22 (source notes). The statute was merely renumbered in 2003. *Id.*

> d. whether reading and writing was required for the position;
> e. all applications for the position.

4.     For each position identified in response to request number 3, submit a copy of the job order and job description.

Randstad has provided the requested information in Requests Nos. 3 and 4 with respect to every assignment where Morrison was placed. Accordingly, this Court need only address whether Requests Numbers 3 and 4—which now ask for information pertaining to all assignments Randstad made in Maryland since 2005—are relevant and unduly burdensome.

## 1.     Relevancy

Randstad asserts that the information the EEOC seeks in Requests Nos. 3 and 4 are not relevant to Morrison's charge. As the United States Court of Appeals for the Ninth Circuit has explained, "courts must enforce administrative subpoenas unless the 'evidence sought by the subpoena [is] plainly incompetent or irrelevant' to 'any lawful purpose' of the agency." *Karuk Tribe Hous. Auth.*, 260 F.3d at 1076. In Requests Numbers 3 and 4, the EEOC seeks information as to every position assignment Randstad has made in Maryland since 2005. In doing so, the Subpoena asks for information about all of the administrative position assignments Randstad made—a category of jobs for which there is no dispute Morrison was unqualified. The Subpoena also asks for information about assignments made in a dozen other Randstad offices for approximately a five year period after Morrison's termination. Given that Morrison solely sought employment by Randstad in its Hagerstown office, and was only employed by Randstad from August 2005 until September 2006, this Court finds that the wide-ranging information sought in Requests Numbers 3 and 4 is not relevant to Morrison's charge.

### 2.    Burden

Randstad also contends that the Subpoena should not be enforced because it is unduly burdensome. Randstad claims that the information the EEOC seeks in Requests Numbers 3 and 4 would require them to produce information as to over 100,000 job placements. Answer Ex. F ¶ 4. Randstad also explains that in order to collect this information, it would have to create records that do not exist as it does not maintain a specific database of job descriptions, job orders or essential job functions of temporary assignments. *Id.* When evaluating burdensomeness, courts often consider the cost of compliance. *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002). Randstad estimates that compiling this information would take at least 120 hours of time and cost between $14,000 and $19,000. Answer Ex. F ¶¶ 7-9. This Court finds that the EEOC's voluminous requests in Numbers 3 and 4 are therefore unduly burdensome.

<u>CONCLUSION</u>

For the reasons stated above, the EEOC's Application (ECF No. 1) is DENIED.

A separate Order follows.

Dated:          February 23, 2011                    /s/_____
                                                     Richard D. Bennett
                                                     United States District Judge